(119 App. Div. 240)

## CITY OF NEW YORK v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department.   May 24, 1907.)

TAXATION—STREET RAILROADS—USE OF STREETS.

> Laws 1867, p. 1275, c. 489, authorized a corporation to construct an elevated railroad in New York City, and section 9 provided the corporation should pay 5 per cent. of its net income from passenger traffic upon Manhattan Island to the city in such manner as the Legislature "may hereafter direct" for the use of the streets. The company having failed to complete the road within the specified time, Laws 1868, p. 2033, c. 855, was passed, extending the time for completion; and section 2 specified that, pursuant to section 9 of the act of 1867, the company should pay 5 per cent. of its net income to the city comptroller quarterly. *Held* that, the tax having been created by the act of 1867, and not by that of 1868, the obligation is not restricted to a percentage upon the company's net profits, but a percentage upon the net profits from passenger traffic; and amounts paid for general taxes, rental damages to ·abutting owners for trespass upon their interest in the streets, and interest on the corporation's mortgage bonds, etc., are not to be deducted in determining the "net income"—they being general charges against the corporation, and not against the passenger traffic.

Appeal from Judgment on Report of Referee.

Action by the city of New York against the Manhattan Railway Company. From a judgment for plaintiff, entered upon report of a referee after an interlocutory judgment, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

Julien T. Davies, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J.   The question presented upon this appeal depends upon the construction to be given section 9, c. 489, p. 1275, of the Laws of 1867, and section 2, c. 855, p. 2034, of the Laws of 1868. By the act of 1867 the West Side & Yonkers Patent Railway Company was authorized to construct an elevated railroad in the city of New York.   Section 9 of that act provided that:

> "The said company shall pay a sum of 5 per cent. of the net income of said railway from passenger traffic upon Manhattan Island, as aforesaid, into the treasury of the city of New York, in such manner as the Legislature may hereafter direct, as a compensation to the corporation thereof, for the use of the streets aforesaid."

The railroad company did not comply with the provision of this act, so as to complete the railroad within one year from the date of its passage, and there was then passed an act (chapter 855, p. 2033, of the Laws of 1868) which extended the time within which the railroad company could construct the road, authorized a change of the motive power, and provided:

> "Sec. 2. In pursuance of section 9 of the act aforesaid it is hereby directed that the said constructing company or its successors shall, in the month of January in each year and quarter annually thereafter, pay to the comptroller of the city of New York 5 per cent. of its net income for the purpose of being expended in the improvements of the condition or appearance of the streets or parts of streets, or avenues or places through which said railway shall be constructed."

104 N.Y.S.—39

This action was brought to recover the amount required to be paid by the railroad company to the city of New York under the provisions of these two sections. The railroad was subsequently constructed, and the rights acquired by the West Side & Yonkers Patent Railway Company have become vested in the defendant, the Manhattan Railroad Company. There was an appeal from an interlocutory judgment in this case, which was determined by the Court of Appeals in Mayor of New York v. Manhattan Railway Company, 143 N. Y. 1, 37 N. E. 494. It was there held that the right of the plaintiff to recover depends upon section 9 of the act of 1867, and in relation to that section the court said:

"But, as the corporation was given by the act various powers and privileges, it was certainly appropriate, even though not necessary, to state the burdens or conditions which were to be imposed upon the corporation in return. * * * The burden was plainly and in terms imposed; but the time and manner of payment were just as plainly stated to be as the Legislature should thereafter direct. * * * The only effect that can be given to it is to put off immediate obligations to pay until the Legislature at some future time gave directions upon the subject. * * * The burden of paying the 5 per cent. was imposed upon the corporation by the act of 1867, and that obligation has been a valid and subsisting one ever since the passage of that act. It was not a creation of the act of 1868, for that act simply gave formal directions in regard to the manner in which a previously existing legal obligation should be discharged."

We thus see that the burden which was imposed upon the defendant was the burden imposed by the ninth section of the act of 1867, the time of payment of which was regulated by the act of 1868, so that the extent of the burden imposed upon the road is determined by the provisions of the act of 1867. By the act of 1867 the railroad company was required to pay the sum of "5 per cent. of the net income of said railroad from passenger traffic upon Manhattan Island." The obligation of the defendant is not restricted, as claimed by the learned counsel for the defendant, to a percentage upon the net profits of the corporation, as distinct from a percentage on the net profit of said railway from passenger traffic, and, if there is any distinction to be drawn between these phrases, the obligation having been imposed by the act of 1867, the liability of the defendant must depend upon that obligation. The question on this appeal presented relates to three items which the defendant claims the referee should have deducted from the gross income to ascertain the amount of net income.

The first of these items is the taxes imposed on and paid by the defendant corporation. The referee found, during the period embraced in this accounting, that there was paid by the defendant or its predecessors, in respect to this portion of the defendant's railway to which this accounting relates, certain annual taxes, the amount of which are stated in the finding. It seems that these taxes were imposed upon the defendant as taxes based upon its railway used in connection with the operation of that portion of its road assessed as real estate. There would also seem to be a corporation tax, a tax upon the capital stock, and, for some portion of the period, the franchise tax. For these taxes the referee refused to allow the defendant in ascertaining the net profits. The question is not as to the net income of the corporation upon

which it is entitled to base the amount of money distributable to its stockholders, or in determining whether or not its operations as a whole have been successful. In other words, it is not the net income of the corporation resulting from all its business, but the net income received by the railway from passenger traffic. It would be clearly improper to include in this, a charge against the corporation, any income that it should receive from sources other than the payment by passengers for passage upon its railroad. A corporation may receive income for advertising privileges, for rentals of its real estate, and other sources to which it would be entitled, and upon such income no charge could be based. On the other hand, its disbursements in relation to its general business, the salaries of its officers, the taxes that it is required to pay, and legal and other incidental expenses are general charges against the corporation as the owner of property, or as enjoying a franchise or right to exist as a corporation. Neither are to be included in ascertaining what its net income for its passenger traffic is.

An entirely different question would be presented if we were required to ascertain a percentage of the net income of the corporation, the net income of the property owned by the corporation; but where the obligation is to pay a percentage of the net income received by the railway from passenger traffic, it seems to me that must be ascertained by taking the gross income from passenger traffic and deducting from that the cost to the road of conducting the passenger traffic, as distinct from the cost to the company in its general operations. I think it can hardly be said that the cost to the road of the salary of its general officers, the legal expenses in defending suits against it, and general expenses of that kind should be deducted from the gross receipts from passenger traffic; and yet I can see no reason why such general administrative expenses of the corporation are not upon the same basis as the taxes that the corporation pays because it owns property or exercises a franchise.

The second item that it is claimed the referee erroneously refused to deduct is that paid by the defendant for what is called "rental damage" to abutting owners for the trespass upon their interest in the streets. But the foundation of these claims was, not for rent, but for trespass by the corporation upon the property of the abutting owners in the street. They had nothing to do with the operation of the road, nor with its passenger traffic. It was a general charge against the company for the unauthorized use of the streets, and has no relation to its passenger traffic.

The remaining claim of the defendant is that the interest on its mortgage bonds or other money borrowed for the construction of its road should have been deducted. But what has been said before, I think, disposes of this claim. It was a general charge of the company, and had no relation to the income of the company received from its passenger traffic.

Our conclusion, therefore, is that the referee was right, and the judgment should be affirmed, with costs. All concur.